IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRINEO BARBOSA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 5012 |
| ) | Judge Rebecca R. Pallmeyer |
| TERRY MCCANN, JIMMY DOMINGUEZ, ) | |
| VANITA WRIGHT, ED BUTKIEWICZ, ) | |
| TAMMY GARCIA, MELODY J. FORD, ) | |
| LT. BURZINSKI, LT. VAUGHN ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Irineo Barbosa, currently an inmate at Stateville Correctional Center, brings this *pro se* action pursuant to 42 U.S.C. § 1983 against Defendants Terry McCann, the Warden of Stateville Correctional Center; Jimmy Dominguez,[1] Vanita Wright, Lieutenant Burzinski, and Lieutenant Vaughn, correctional officers at Stateville; Ed Butkiewicz, a counselor at Stateville; Tammy Garcia, a grievance officer at Stateville; and Melody J. Ford, the Chair of the Administrative Review Board. Plaintiff alleges that from May 2, 2007 through November 2, 2007, the conditions of his confinement at Stateville were inhumane and unconstitutional, that he was denied access to the courts, that his grievances were ignored, and that he did not receive adequate medical treatment. Defendants have moved to dismiss arguing that the compliant fails to state a claim for relief and that there is no basis for a finding of liability against the individual Defendants. For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

---

[1] After several attempts, Jimmy Dominguez was served on April 22, 2009; however, an appearance on his behalf was not filed until August 11, 2009. He therefore is not a party in Defendants' motion to dismiss.

**I.    Standard of Review**

In considering Defendants' motions, the court recognizes that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Federal Rule of Civil Procedure 8(a)(2) requires only that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The court will accept well-pleaded allegations as true and will draw any reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel,* 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must, however, describe the claim in sufficient detail to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). The complaint's allegations must include sufficient facts to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic*, 550 U.S. at 570. As the Seventh Circuit has explained, Plaintiff's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads [him]self out of court." *E.E.O.C. v. Concentra Health Serv., Inc.* 496 F.3d 773, 779 (7th Cir. 2007). A plaintiff can also plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

**II.    Facts**

From May 2, 2007 until November 2, 2007, Plaintiff was confined in punitive segregation at Stateville Correctional Center. Upon his arrival in segregation, he received a blanket and one dirty, torn sheet, but he was never issued a pillow. The blanket shed, irritating Plaintiff's lungs and eyes, and Plaintiff's mattress was dirty and lumpy, causing him back pain. Plaintiff's four-by-nine-foot cell, which he shared with another inmate, was filthy and roach-infested, and the only cleaning supplies he received were two small bars of soap once every week or so. As a result, Plaintiff's skin broke

out in "red bumps all over his body." Plaintiff's belongings, stored under the cell's bunk pursuant to prison regulations, were eaten by rodents, and roaches frequently crawled on his body during the night. Because there was no ladder in his cell, Plaintiff was forced to climb on the toilet and sink in order to reach the top bunk. All the toilets in Plaintiff's ward flushed once every 15 minutes, causing him distress. Plaintiff received no more than one haircut per month, and he never received a razor despite an alleged policy that razors were to be distributed once a week for shaving.

Plaintiff claims that food trays routinely sat for hours before being served and that he consequently never received a hot meal during his confinement. Eating these cold meals upset his stomach and caused him to become constipated. Plaintiff also suffered heartburn because breakfast was served at 2:00 a.m.

Plaintiff received just one ten-minute shower each week. From September to November, he showered in the cold air that entered the shower area through broken windows. There was nowhere for Plaintiff to store his clothes and shower gear while showering and, because there was but a single hook in the cell, only one inmate could hang his towel to dry and Plaintiff's own towel remained damp between showers. Plaintiff had a recreation session just once each week, and otherwise was confined to his cell other than for medical treatment or to see a visitor during visiting hours.

Plaintiff alleges that prisoners with medical issues had to wait for treatment until a medical technician ("med-tech") made rounds, Monday through Friday mornings. After an examination by the med-tech, Plaintiff alleges, inmates were required to wait two more days to receive a diagnosis from the med-tech, who was not qualified to make such determinations, before being seen by a medical doctor.

Finally, Plaintiff complains of inadequate library services for inmates held in punitive segregation. Paralegals and law clerks were expected to make rounds once a week, he alleges, but during the time that Plaintiff was in punitive segregation, the legal staff did not tour for as long

as nine weeks at a time. Plaintiff also complains that prisoners were only permitted "to order three cases per week and shepardize five case cites per week." (Compl. at 5.) These limitations on library access, Plaintiff alleges, prevented him from learning the law necessary for his petition for post-conviction relief, and as a result, someone else had to file the petition on his behalf. The petition was dismissed on June 10, 2008, as being frivolous and patently without merit.

Plaintiff contends that all Defendants were aware of all of the alleged unconstitutional conditions because of the numerous grievances Plaintiff filed, which Defendants reviewed and denied.

## III.     Analysis

Plaintiff's allegations can be understood as presenting four claims: first, that the conditions of his confinement were unconstitutional; second, that he was denied access to the courts; third, that Defendants failed to respond to his grievances; and fourth, that medical care was inadequate. The court examines those claims below.

### A.     Conditions of Confinement

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Prison conditions violate the Eighth Amendment, however, only when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), *citing Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). To plead an Eighth Amendment violation, a plaintiff need only allege that prison officials deliberately ignored conditions of confinement that failed to meet contemporary requirements of minimal decency. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

1. **Food**

An inmate is entitled to a healthy environment including "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). That the food may occasionally contain foreign objects or is served cold, while unpleasant, does not amount to a constitutional deprivation. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("complaints about cold and poorly-prepared food must" fail); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Plaintiff avers that food was routinely left sitting for an hour or more and that he developed stomach and bowel problems from eating it. He also claims that eating breakfast at 2:00 a.m. caused him heartburn. Had Plaintiff merely alleged that the food was served cold, this claim might well not survive constitutional scrutiny. But because Defendant alleges that the food was so compromised as to cause him physical injury, dismissal is not appropriate at this time. Defendants' motion to dismiss is denied as to this claim.

2. **Showers**

In *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988), the Seventh Circuit held that one shower a week is constitutionally sufficient. Plaintiff does not dispute that he received his constitutionally-mandated weekly shower, but alleges in addition that from September to November, he showered in the cold because nothing was placed over broken windows in the shower area. Prolonged exposure to extreme cold may rise to the level of a constitutional violation. *See, e.g., Del Raine v. Williford*, 32 F.3d 1024, 1035 (7th Cir. 1994). Whether or not the period Plaintiff was exposed to cold air while showering was sufficiently severe to violate the Constitution is a matter to be resolved on a more developed record. Defendants' motion to dismiss this claim is denied.

### 3. Out-of-Cell Recreation

A lack of access to exercise or recreation may violate the Constitution in extreme and prolonged situations where the lack of movement threatens the inmate's health. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996); *French v. Owens*, 777 F.2d 1250, 1355 (7th Cir. 1985); *cf. Pearson v. Ramos*, 237 F.3d 881, 884 (an unjustified, lengthy deprivation of opportunity for out-of-cell exercise could violate the Constitution, but prisoner's misconduct justified restricting yard privileges). For example, the Seventh Circuit has found that refusing an inmate any out-of-cell exercise for a period of several months violates the Eighth Amendment. *Delaney v. DeTella*, 256 F.3d 679 (7th Cir. 2001) (six months); *Winger v. Pierce*, 325 Fed. Appx. 435, 436 (7th Cir. 2009) (nine months). In the instant case, Plaintiff alleges that he received one recreation day per week and was also allowed movement for medical reasons or visits. He does not claim that he was unable to exercise in his cell or that the lack of more time outside his cell damaged his health. Defendants' motion to dismiss this claim is granted.

### 4. Exposure to Pests

Allegations of prolonged exposure to pests may state a claim under the Eighth Amendment. *See Antonelli*, 81 F.3d at 1431 (sixteen months of pest infestation is a "prolonged deprivation"). Defendants' motion to dismiss is denied, therefore, as to Plaintiff's claims that roaches crawled on him at night and that vermin ate his property. The court cautions, however, that to survive summary judgment on this claim, Plaintiff will need to demonstrate that Defendants were aware of and deliberately indifferent to this condition and that he suffered an injury as a result of the vermin-infested cell. *Farmer*, 511 U.S. at 834.

### 5. Lack of a Stool, Stowage for Shower Gear, Insufficient Hooks, and Ladder

Plaintiff has no constitutional right to have a stool or other furniture on which to sit in his cell. *See, e.g., Moore v. Monahan,* No. 06 C 2008, 2008 WL 111299, *8 (N.D. Ill. Jan. 10, 2008) (prison

officials' failure to provide a desk and chair did not rise to the level of cruel and unusual punishment), citing *Luedtke v. Gudmanson*, 971 F.Supp. 1263, 1270 (E.D. Wis. 1997). Nor does the Constitution require officials to furnish a place to stow his shower gear or additional hooks in his cell. *See Mejia v. McCann*, No. 08 C 4534, 2009 WL 536001, *4 (N.D. Ill. Mar. 3, 2009). Although it was inconvenient for Plaintiff to use the toilet and sink to climb to his bunk because there was no ladder, routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," and "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992), *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991), *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The court accordingly grants Defendants' motion to dismiss as to these claims.

### 6. Lack of Sanitation

"[P]rison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). Plaintiff complains that his cell was filthy and that he was furnished with only two bars of soap about once a week with which to clean it. As a result, a rash broke out all over his body. Plaintiff also claims he received only one dirty, torn sheet, a blanket that shed and irritated his lungs and eyes, and a mattress that was dirty and lumpy, causing injury to his back. Plaintiff allegedly never received a pillow. While it is unclear from Plaintiff's complaint how frequently, if at all, the cell was cleaned or the degree of squalor in which Plaintiff lived, his allegations of physical harm from the alleged unsanitary conditions are sufficient to state a claim under the Eighth Amendment. *See Marting v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (denying motion to dismiss where plaintiff alleged specific harm in the form of a skin rash resulting from deprivation of shower privileges); *Murphy v. Walker*, 51 F.3d 714, 720-21 (7th Cir. 1995) (lack of adequate clothing or bedding may rise to the level of a constitutional violation).

The court is less persuaded by Plaintiff's complaints that he received only one haircut per month and never received razors for shaving. Although Plaintiff may have preferred more frequent haircuts and a clean shave, he does not allege that these deprivations caused him physical harm. The court accordingly grants Defendants' motion to dismiss with respect to these claims.

### B.    Access to the Courts

Prisoners have a constitutional right under the Sixth Amendment to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a claim for deprivation of this right, "a prisoner must demonstrate that the deprivation he suffered hindered his efforts to pursue a legal claim and resulted in actual injury." *Jones v. Sheahan*, No. 01 C 6548, 2002 WL 959814, at *4 (N.D. Ill. May 9, 2002), *citing Lewis v. Casey*, 518 U.S. 343, 351 (1996) (recognizing possibility of cognizable injury where library inadequacies prevent plaintiff from filing a complaint or cause plaintiff's complaint to be dismissed for failure to satisfy some technical requirement); *see also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Because the right protects access to the courts rather than to legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). An inmate's right of access to the courts does not require prison officials to provide a law library or legal counsel. *Lewis*, 518 U.S. at 350; *Lehn*, 364 F.3d at 868 ("[T]he law requires only '"meaningful access" to the courts.' It does not require any specific resources such as a law library or a laptop with a CD-ROM drive or a particular type of assistance.")

Plaintiff here claims that due to the limited legal assistance and research materials available to inmates in segregation, he was unable to learn the law, and consequently, had to rely on someone else to file his petition for post-conviction relief. Nonetheless, Plaintiff was able to file his petition, and the state court heard it and found it to be without merit. The fact that the state court

dismissed the petition does not by itself establish prejudice, however. Plaintiff has not identified how greater access to library resources would have made a difference in the outcome of his petition–he has not, for example, identified any relevant legal authorities he failed to cite or information he was precluded from furnishing to the state court. Without such allegations, Plaintiff cannot plausibly assert that any of Defendants' actions interfered with his effort to pursue a non-frivolous legal claim. The court accordingly grants Defendants' motion to dismiss as to this claim.

### C. Failure to Respond to Grievances

Plaintiff alleges that Defendants Tammy Garcia, the grievance officer at Stateville Correctional Center, and Melody Ford, an administrative review board chairperson, knew of the above alleged unconstitutional conditions through their review of Plaintiff's grievances, but took no corrective action. A prison official may be held liable under 42 U.S.C. § 1983 for failing to respond to violations of a prisoner's constitutional rights that come to his or her attention via the grievance process. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Verser v. Elyea*, 113 F.Supp.2d 1211, 1215 (N.D. Ill. 2000). Merely ruling against a prisoner on an administrative complaint does not, however, impute liability to a prison official under § 1983. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Plaintiff attached to his complaint a grievance officer's report, signed by Garcia, and two Administrative Review Board "Return of Grievance of Correspondence" forms, signed by Ford. Plaintiff alleges that the conditions in his cell were an on-going problem, but Garcia did nothing about it. The grievance form itself appears to defeat this allegation: Garcia's response to Plaintiff's grievance shows that she reviewed the grievance and, among other findings, determined that he was free to request cleaning supplies. Plaintiff has not alleged that Garcia had any authority over his living conditions other than to review his grievances. Any failure on the part of Garcia to properly investigate his claims or to impose discipline on the alleged wrongdoers after the fact does not amount to a constitutional violation because any such failure was not the cause of Plaintiff's

injuries.  See *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990).

Plaintiff also complains that Ford ignored the unconstitutional conditions of his confinement by dismissing his grievance as untimely.  State prisoners have no constitutionally mandated liberty interest in an institutional grievance procedure, however.  *Antonelli*, 81 F.3d at 1430-31.  Illinois statutes and regulations establishing the Department of Corrections' grievance procedures neither confer a substantive due process right under the Fourteenth Amendment, nor do they create a right to sue under state law.  *Id.*  Defendant's decision to dismiss Plaintiff's grievance pursuant to the state-mandated procedures is therefore not independently actionable under § 1983.  *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001); *Antonelli,* 81 F.3d at 1430; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Defendants' motion to dismiss is therefore granted as to this issue, and Defendants Garcia and Ford will be dismissed from this action.

### D. Lack of Medical Treatment

Prison officials violate the Eighth Amendment if they deliberately ignore a patently serious medical need.  *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).  Plaintiff alleges that prisoners with medical issues had to wait until a med-tech made rounds and then were forced to wait for another two days for a diagnosis before they were seen by a medical doctor.  Wholly lacking in Plaintiff's complaint is any allegation that he was denied treatment for a serious medical need.  The court accordingly dismisses this claim.

### E. Personal Involvement

Defendants argue that Plaintiff has not sufficiently pleaded Defendants' personal involvement[2] because he did not specifically identify the alleged unconstitutional acts or conduct

---

[2]   Defendants also argued that the Eleventh Amendment barred suit against them in their official capacity.  In response, Plaintiff stated that he was not suing Defendants in their official capacity, but only in their individual capacities.

of each named Defendant with respect to Plaintiff's conditions of confinement. *See Bell Atlantic Corp.*, 550 U.S. at 555, citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In his response, however, Plaintiff clarifies his claim, asserting that Defendants Burzinski and Vaughn, correctional officers at Stateville, were in charge of providing him with the basic human necessities, and that the other Defendants were aware of the conditions because of the grievances he filed.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, to be held liable, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001), quoting *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001); *Jones v. City of Chicago*, 856 F. 2d 985, 992-93 (7th Cir. 1988); *see also Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiff alleges that Defendants Burzinski and Vaughn were responsible for his living conditions, including furnishing him with basic necessities, and allowed the allegedly constitutionally deficient conditions to persist despite Plaintiff's repeated complaints. The court therefore denies Defendants' motion to dismiss with respect to Defendants Burzinski and Vaughn.

The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions bought under § 1983. *See Sanville,* 266 F.3d at 740. Dismissal of a *pro se* complaint on grounds of lack of active personal involvement is nonetheless inappropriate when the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli*, 81 F.3d at 1428-29. Even broad allegations of unconstitutional conditions of confinement may be sufficient to withstand dismissal against senior administrators where the claims allege "potentially systemic," rather than "clearly localized," constitutional violations. *Id.* Under circumstances of alleged systemic violations, a reasonable inference of personable involvement may be enough to sustain a claim against certain senior officials with wide discretionary powers, such as the county sheriff or, as here, the prison warden. *Id.* at 1428-29; *Sanders v. Sheahan*, 198 F.3d 626, 628-29

(7th Cir. 1999). The court therefore denies Defendant's motion with respect to Defendant McCann. Because Plaintiff has failed to allege any personal involvement on the part of Defendants Dominguez and Wright, however, the court dismisses them from this action.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [[22] is granted in part and denied in part. Plaintiff's claims as to access to the courts, the failure of Defendants Garcia and Ford to respond to his grievances, and denial of medical care are dismissed in their entirety. Defendants Garcia and Ford are dismissed from this action.

Certain other Eighth Amendment claims are also dismissed: Plaintiff's claims relating to showering just once per week; denial of out-of-cell recreation; lack of a stool, stowage for shower gear, insufficient hooks, and ladder; and infrequent haircuts and access to razors are also dismissed. As Plaintiff has alleged no personal involvement on the part of Defendants Dominguez and Wright, they are dismissed from this action.

Defendants' motion to dismiss is denied with respect to all remaining claims, including his claim regarding being served food that had been sitting for an extended period of time, showering in extreme cold, prolonged exposure to pests, lack of sanitation, and failure to provide reasonably adequate sleeping arrangements.

Defendants are given 21 days from the date of this order to answer or otherwise plead to Plaintiff's remaining claims. A Rule 16 conference by telephone is scheduled for Tuesday, October 6, 2009, at 8:30 a.m., the call to be initiated by counsel for Defendants.

ENTER:

Dated: September 8, 2009

_____
REBECCA R. PALLMEYER
United States District Judge