UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRINEO BARBOSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 5012 |
| | ) |
| TERRY McCANN, ED BUTKIEWICZ, | ) Judge Rebecca R. Pallmeyer |
| LT. BURZINSKI, LT. VAUGHN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Irineo Barbosa, an inmate at the Stateville Correctional Center, filed this *pro se* lawsuit against Stateville Warden McCann, Correctional Officers Butkiewicz, Burzinski, and Vaughn, and others, alleging that Defendants violated his Eighth Amendment rights. In an earlier order [Doc. No. 42], the court dismissed certain claims and several other Defendants. Left standing in that order were Plaintiff's claims that he was denied nutritionally adequate food; exposed to extreme cold while showering; subjected to prolonged exposure to roaches and vermin and to a lack of sanitation; and denied reasonably adequate sleeping arrangements. Defendants now seek summary judgment on those remaining claims. As explained below, the court is satisfied that Defendants have met their discovery obligations and that Plaintiff has had an ample opportunity to respond to the motion for summary judgment. He has failed to do so, however, and having reviewed the record, the court now grants the motion.

## PROCEDURAL HISTORY

Defendants filed their motion for summary judgment on February 26, 2010. Included with that motion were a Rule 56.1 statement of material facts and the Rule 56.2 notice to Plaintiff, explaining that he is required to respond to the motion by admitting or denying each factual statement and identifying evidence that establishes a genuine dispute for trial. The court initially set a briefing schedule requiring Plaintiff to respond by April 13, 2010. [Doc. No. 68.] Later,

however, after Plaintiff complained that Defendants had not provided materials requested in discovery, the court struck that motion. [Doc. No. 98.] The court has ruled on a number of discovery disputes, a process rendered more difficult by Plaintiff's refusal to participate in telephone status conferences [Doc. No. 74]. Despite the difficulties, the court is now satisfied that Defendants have met their discovery obligations. Accordingly, the court reinstated their motion for summary judgment and ordered Plaintiff to respond by December 10, 2010. [Doc. No. 108.]

Plaintiff failed to do so. Instead, on December 20, Plaintiff filed a written motion seeking sanctions for Defendants' purported failure to provide copies of Administrative Directives related to bedding and linens. [Doc. No.111.] As Defendants explained in their response to that motion [Doc. No. 112], there are no Administrative Directives on these issues. In support of his motion for sanctions, Plaintiff cited an index of Illinois Department of Corrections ("IDOC") Rules that refer to bedding and linens, but those Rules are publicly available and state only that "bedding suitable for weather and temperature shall be provided" and that "clean linen shall be provided on a scheduled weekly basis." (Defendants' Response to Motion for Sanctions [Doc. No. 112] at 5, citing 20 Ill. Admin. Code §§ 502.220, 502.230.) In any event, whether Defendants violated Plaintiff's Eighth Amendment rights does not turn on their compliance with state regulations. The court declines to award sanctions and declines to further postpone resolution of this case, which has been pending for more than two years.

On December 22, 2010, the court ordered Plaintiff to show cause in writing why the case should not be dismissed for want of prosecution. [Doc. No. 110.] As of this date, January 5, 2011, he has not responded.

## **FACTS**

Because Plaintiff has not responded to Defendant's Rule 56.1 statement, the facts set forth there are presumed true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Plaintiff Irineo Barbosa was incarcerated at Stateville Correctional Center's F-House for six months between

May 2, 2007 and November 2, 2007. (Def.'s 56.1 [Doc. No. 63] ¶ 5.) Plaintiff claims that he was housed in a cell with a dirty mattress that was black and lumpy and generated pain in his neck, head, and back. (*Id.* ¶¶ 6, 8.) His head and neck pain was exacerbated by the fact that Plaintiff was never provided with a pillow. (*Id.* ¶ 9.) Plaintiff complained to Defendants Butkiewicz and Vaughn about the mattress on several unspecified dates. (*Id.* ¶ 7.)

Plaintiff claims the toilets in his cell flushed once every fifteen minutes and, because he and his cellmate had to wait a minimum of fifteen minutes between flushes, a "nasty odor" resulted. (*Id.* ¶ 10.) Plaintiff says he complained to "officers, sergeant[s], lieutenant[s], all of them," but is unable to remember the names of those to whom he voiced these complaints. He recalls having complained to Defendant Vaughn, but cannot remember the dates of those complaints; admits that he did not complain to Defendants McCann or Butkiewicz; and does not remember complaining to Defendant Burzinski, and in fact does not even know who Defendant Burzinski is. (*Id.* ¶ 11.) Defendants have presented work orders reflecting inspections of the toilets in F-House on a monthly basis, and work orders for repair of toilets in the F-House and in Plaintiff's cell in August 2007 and October 2007. (*Id.* ¶ 12.)

Plaintiff was permitted just one ten-minute shower per week, and was usually cold because the water was cold and because windows in the shower room were broken. (*Id.* ¶¶ 13, 14.) Plaintiff complained about these conditions to Defendant Vaughn on unspecified dates. (*Id.* ¶ 15.) Defendants have submitted records reflecting routine inspection of windows and water temperature and work orders for repair, issued during the relevant time period. (*Id.* ¶ 16, citing Safety and Sanitation Inspection Reports, Exhibits D and E to Def.'s 56.1.)

Plaintiff claims he received his breakfast between 2:00 and 3:00 a.m. and suffered heart burn and irregular bowel movements as a result. (*Id.* ¶¶ 17, 18.) He did not see a medical professional about these conditions but did complain to a medical technician ("med tech") whenever the med tech "came up there," and was furnished with Ibuprofen when available. (*Id.* ¶ 19.) Plaintiff

3

complained to Defendants Butkiewicz and Vaughn on dates he does not now recall about the time and temperature of his breakfast. (*Id.* ¶ 21.) On occasion, the chuckhole through which Plaintiff received his meals was closed, and Plaintiff would have to wait as long as an hour to reach the food. (*Id.* ¶ 20.)

Plaintiff observed "gangs" of roaches in F-House when he was housed in segregation. (*Id.* ¶ 22.) He complained to Defendants Butkiewicz on unspecified dates, and observed exterminators only once or twice during his six-month tenure in F-House. (*Id.* ¶¶ 23, 24.) Defendants presented records, however, reflecting visits from a professional pest control service provider at least eight times per month during that period. (*Id.* ¶ 25, citing Critter Ridder invoices, Group Exhibit C to Def.'s 56.1.)

Plaintiff claims, in addition, that he was never given cleaning supplies during his six-month tenure in segregation; that he broke out in "red bumps" due to the blankets and the roaches; that mice ate property he stored under his bed while in segregation; and that "particles" from the blanket irritated his eyes and lungs. (*Id.* ¶ 27-30.)

Plaintiff never advised Defendants McCann or Burzinski about the conditions alleged in his complaint. (*Id.* ¶ 31, citing Plaintiff's Deposition, Exhibit A to Def.'s 56.1, at 24, 28.)

## DISCUSSION

As noted, Plaintiff has not responded to Defendants' Rule 56.1 Statement of Facts, nor has he submitted a memorandum in opposition to Defendants' motion for summary judgment. The standards for analysis of his Eighth Amendment claims are well-recognized: A prison official is liable under that Amendment for denying a prisoner of his basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs* 522 F.3d 765, 773 (7th Cir. 2008); *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 847 (1994). Deliberate indifference means that the official had actual knowledge of the harm so that the court can infer a conscious refusal to prevent it. *Duckworth v. Franzen*, 780 F.2d 645, 644 (7th Cir.

1985), *abrogated on other grounds* by *Farmer*, *see Haley v. Gross*, 86 F.3d 630, 644 n.34 (7th Cir. 1996). An official who has actual knowledge of an excessive risk to an inmate's health and safety is not liable if he responded reasonably to the known risk, even if the response was not effective in averting harm, because those circumstances do not amount to deliberate indifference. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

These standards defeat Plaintiff's claims. Liability for a constitutional violation arises only where the defendant is personally involved in the deprivation. Defendant McCann is the former Warden at Stateville. Apart from that status, Plaintiff has offered no basis for the conclusion that McCann was aware of the alleged deprivations. McCann's status as warden is insufficient to establish his involvement. *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1985). Moreover, Plaintiff has admitted that he never complained to Defendants McCann and Burzinski, and testified at one point that he does not know who Burzinski is. There is no basis in this record for a finding that McCann or Burzinski knew of, facilitated, approved, condoned, or turned a blind eye to the conditions of which he complains. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing cases). Burzinski and McCann are entitled to summary judgment.

Plaintiff testified that he did complain to Vaughn and Butkiewicz on several unspecified occasions. That testimony creates a genuine dispute of fact concerning Defendants Vaughn and Butkiewicz's awareness of alleged violations. With respect to certain of Plaintiff's claims, however, other evidence defeats the inference that they were deliberately indifferent to those violations. Safety and Sanitation reports submitted by Defendants show that during the relevant time period, the prison was regularly inspected, and that work orders were issued for the repair of windows and screens. The reports also document checks for availability of hot water, and records show that a repair was performed in May 2007 and that hot water was available thereafter. The fact that Plaintiff nevertheless experienced broken windows and cold water, while regrettable, does not establish that Defendants were indifferent. Similarly, Stateville Correctional Center had a contract

with an exterminator, and prison records show that the pest service visited F-House at least twice a month during the time Plaintiff was housed there. *See Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (policy of frequent exterminations defeats a showing of deliberate indifference). And work orders for repair of the toilets in F-House in August and October 2007 show that Plaintiff's complaints about the problems with the toilet in his cell were not ignored. Again, if Plaintiff contends that the pest removal efforts and plumbing repairs were unsuccessful, this fact would not establish that Defendants were deliberately indifferent.

That leaves the issues of food and sleeping conditions. Plaintiff claims he suffered indigestion and irregular bowel movements that he believes are a result of the fact that his breakfast was served between 2:00 and 3:00 a.m. The Seventh Circuit has held that "a well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required" to satisfy the Constitution. *Lunsford v Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994), quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). There is no evidence that this standard was violated in Plaintiff's case. Although he suggests that his meals posed a health hazard, Plaintiff offers no specifics regarding any need for medical treatment other than complaints "whenever the med tech came up there . . . ." A plaintiff's complaints about food can reach the level of a constitutional violation, but the odd timing of Plaintiff's breakfast service and his belief that indigestion and irregularity resulted are insufficient to establish a serious medical need. Plaintiff testified that he complained to the med tech and was furnished with Ibuprofen on occasion; he has not responded to Defendants' motion and offers no medical records or other evidence that would establish that his medical condition was serious. Nor is there any evidence that indigestion and irregularity were caused by the time of the day on which he was served breakfast or the fact that his meals sometimes sat outside his cell for as long as an hour before he was able to eat it.

Finally, the court turns to the issue of bedding. Plaintiff alleged that in his six months in F-House he had a dirty and lumpy mattress and suffered neck and back pain as a result. He

complained about his mattress "a couple times, like three or four times" to Defendant Vaughn and once a month to Defendant Butkiewicz. (Barbosa Dep., Exhibit A to Def.'s 56.1, at 11-14.) A lack of sanitary conditions, including clean bedding, may indeed qualify as a denial of the "minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 774, citing *Gillis v. Litscher*, 468 F.3d 488, 494 (7th Cir. 2006). *See also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992) (conditions of confinement that include filth, constant smells of human waste, and dirty bedding can violate the Eighth Amendment). In *Townsend*, a prisoner complained that this health was jeopardized by sleeping on a wet and moldy mattress. The Seventh Circuit concluded that the prisoner's testimony that he personally complained about his mattress and requested a new, clean one was sufficient to survive summary judgment on his claim that prison officials were deliberately indifferent to unsanitary conditions.

Disappointingly, Defendants do not discuss this claim in their motion for summary judgment, in the apparent belief that it was dismissed.[1] The court is nevertheless reluctant to direct the parties to proceed to trial on this claim. In the court's judgment, a lumpy or uncomfortable mattress does not pose an objectively serious risk of harm. And although Plaintiff contends the mattress was dirty, he testified that he received a clean sheet once a week (Barbosa Dep. at 11), evidently consistent with IDOC rules requiring that "clean linen . . . be provided on a scheduled weekly basis." *See Thomas v. Winters*, No. 04-3186, 2006 WL 2547961 (C.D. Ill. Aug. 31, 2006) (no Eighth

---

[1] In their Memorandum of Law, Defendants assert, "The only claims that remain are: 1) Plaintiff's cell was infested with roaches; 2) meals were served cold, often at 2:00 or 3:00 A.M.; 3) the showers were cold due to broken windows and cold water; and 4) the toilets malfunctioned, flushing at a maximum every fifteen minutes." (Memorandum in Support of Summary Judgment [Doc. No. 65] at 2-3.) In fact, the court denied Defendants' motion to dismiss with respect to Plaintiff's claims "regarding being served food that had been sitting for an extended period of time, showering in extreme cold, prolonged exposure to pests, lack of sanitation, and *failure to provide reasonably adequate sleeping arrangements*." Memorandum Opinion and Order [Doc. No. 42] at 12 (emphasis added). The court ruled on discovery disputes concerning this issue, *see* Orders of 9/15/2010 [Doc. No. 98] and 10/28/2010 [Doc. No. 104], which presumably would not have arisen had such claims been dismissed.

Amendment violation where soiled mattress was covered by a sheet washed at least weekly).

The court concludes that this claim, too, lacks merit. Because neither party has adequately addressed it, however, the bedding claim will be dismissed without prejudice. Should Plaintiff wish to pursue it, he will be expected to move for reinstatement of the claim within 30 days.

## **CONCLUSION**

Plaintiff's motion for sanctions [111] is denied. Defendant's motion for summary judgment [62] is granted. Plaintiff's claim concerning inadequate bedding is dismissed without prejudice.

ENTER:

Dated: January 5, 2011

_____
REBECCA R. PALLMEYER
United States District Judge