UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **IRINEO BARBOSA R-45182**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 5012 |
| **TERRY McCANN, ED BUTKIEWICZ, LT. BURZINSKI, and LT. VAUGHN,** | ) ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Irineo Barbosa has brought suit challenging the conditions of his confinement at the Stateville Correctional Center. On January 5, 2011, the court granted summary judgment in favor of Defendants on all but one of these claims, noting Plaintiff's apparent failure to respond to the motion for summary judgment or to an order directing him to show cause why the case should not be dismissed. Plaintiff now seeks reconsideration of that ruling. He points out that he did in fact submit a response to Defendants' motion for summary judgment, a response the court evidently overlooked because it preceded several other filings relating to a discovery dispute and because Plaintiff made no mention of his earlier response when the court directed him to show cause. The court nevertheless agrees that it should have considered Mr. Barbosa's response to the motion for summary judgment, and will do so now.

For the reasons explained here, summary judgment is entered in favor of Defendnats McCann and Burzinski. With respect to Defendants Butkiewicz and Vaughn, the motion is granted on all of the claims Plaintiff has asserted, with two exceptions: his claims regarding pest infestation and inadequate bedding survive this motion.

## PROCEDURAL HISTORY

In his complaint, Plaintiff alleges that he lived in punitive segregation at Stateville from May 2, 2007 through November 2, 2007 and suffered a number of deprivations while in segregation.

The court dismissed several of those claims on a Rule 12(b)(6) motion: the claim of denial of access to courts, a claim that Defendants had failed to respond to grievances, and the inadequate medical care claim were dismissed in their entirety. (Dkt. No. 42, at 12.) The court dismissed certain other claims as well: the claims regarding infrequency of showers; the claim that he was denied of out-of-cell recreation; a claim that he was denied a stool, storage for his shower gear, additional hooks, and a ladder for his cell; and a claim of infrequent haircuts and access to razors were also dismissed. (*Id.*). The case proceeded on Plaintiff's remaining claims: that he was served food that had been sitting for an extended period of time; was required to shower in extreme cold; was exposed to pests for prolonged periods; was subjected to a lack of sanitation; and was denied reasonably adequate sleeping arrangements. (*Id.*).

Protracted and contentious discovery followed. Defendants moved for summary judgment, and Plaintiff responded in September 2010. He also argued, however, that he had not been provided with necessary discovery responses. (Dkt. Nos. 62, 69, 73-75, 77-79.) In response to the court's orders, Defendants ultimately complied with their discovery obligations. (Dkt. Nos. 92, 96, 104, 108.) The court then ordered discovery closed and reinstated Defendants' motion for summary judgment. (Dkt. No. 108.) On January 5, 2011, the court considered that motion and granted it. (Dkt. No. 115.)

Plaintiff correctly observes that the court's ruling made no reference to his September 2010 filing, which he made before discovery was complete. The court had overlooked that submission, perhaps because Plaintiff had insisted he was unable to respond to the motion for summary judgment without discovery responses. The court has not yet entered a final judgment in this case, however, and is free to reconsider its earlier ruling. "A district court may reconsider a prior decision . . . when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501-02 (7th Cir. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). The

court failed to consider Plaintiff's submission earlier, but will do so now, considering the factual information presented in that submission in the light most favorable to Plaintiff, the non-moving party, and drawing all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *E.E.O.C. v. AutoZone, Inc.*, 630 F.3d 635, 639 (7th Cir. 2010).

## FACTS

Plaintiff Irineo Barbosa was incarcerated, housed in a segregation unit, at Stateville Correctional Center's F-House for six months between May 2, 2007 and November 2, 2007. (Plaintiff's 56.1 Response ("Pl.'s 56 Response") [Dkt. No. 99] ¶ 5.) Plaintiff claims that he was housed in a cell with a dirty mattress that was black and lumpy; as a result of these conditions and of being denied a pillow, Plaintiff suffered pain in his neck, head, and back. (*Id.* ¶¶ 6, 8, 9.) Plaintiff complained to Defendants Butkiewicz and Vaughn about the mattress on several unspecified dates. (*Id.* ¶ 7.)

The toilets in Plaintiff's cell were, he claims, set on a timer to flush only once every 15 minutes. As a result of the fact that he and his cellmate were required to wait 15 minutes between flushes, there was a "nasty odor" in the cell that generated headaches and nausea. (*Id.* ¶ 10.) Plaintiff says he complained to "officers, sergeant[s], lieutenant[s], all of them," but is unable to remember the names of those to whom he voiced these complaints. (*Id.* ¶ 11.) He does recall having complained to Defendant Vaughn, but cannot remember the dates of those complaints; admits that he did not complain to Defendants McCann or Butkiewicz; and does not remember complaining to Defendant Burzinski, and in fact does not even know who Defendant Burzinski is. (*Id.*) In his response to Defendant's summary judgment motion, Plaintiff asserts that he did inform Butkiewicz and suggests that he did complain to Burzinski but "could not remember Burzinski by name." (*Id.*.) The testimony he cites, however, confirms Defendants' version; when asked, "Do you remember complaining to Butkiewicz about the toilet?," Plaintiff responded, "No." (Barbosa Deposition [Dkt. No. 65-2], at 17.) Asked whether he had complained to Burzinski, Plaintiff

3

responded, "Again, I don't know him."  (*Id.* at 28.)

Defendants have presented work orders reflecting inspections of the toilets in F-House on a monthly basis, and work orders for the repair of toilets in the F-House and in Plaintiff's cell in August 2007 and October 2007.  (Defendants' 56.1 ("Defs' 56.1") ¶ 12.)  Plaintiff disputes this evidence, but only to the extent that it is offered "to deceive the court into believing the timers were removed from Plaintiff's toilet and all F-house toilets." (Pl.'s 56.1 Response ¶ 12.)   Plaintiff was permitted just one ten-minute shower per week, and was usually cold because the water was cold and because windows in the shower room were broken. (*Id.* ¶¶ 13, 14.)  Plaintiff complained about these conditions to Defendant Vaughn on unspecified dates during the time he was confined to segregation. (*Id.* ¶ 15.)

Defendants have submitted records reflecting monthly inspection of safety and sanitation issues, including such issues as broken windows and inadequate hot water.  (Defs' 56.1 ¶ 16, citing Safety and Sanitation Inspection Reports, Exhibits D and E to Defs' 56.1.)   Plaintiff acknowledges that broken windows and water temperature issues were "documented"; he contends there is no evidence that repairs were actually made (Pl.'s 56.1 Response ¶ 16), but the monthly reports submitted by Defendants include status notations confirming that work orders were submitted for repair of broken windows.  (Memoranda, Dkt. No. 65-2, at 55, 57, 59, 61, 63, 65, 67.)

Plaintiff claims he received his breakfast between 2:00 and 3:00 a.m. and suffered heartburn, indigestion, pain, and irregular bowel movements as a result. (Pl.'s 56.1 Response ¶¶ 17, 18.) He did not see a medical professional about these conditions but did complain to a medical technician ("med tech") whenever the med tech "came up there," and was furnished with Ibuprofen when available. (*Id.* ¶ 19.) Plaintiff complained to Defendants Butkiewicz and Vaughn on dates he does not now recall about the time and temperature of his breakfast.  (*Id.* ¶ 21.) On occasion, the chuckhole through which Plaintiff received his meals was closed, and Plaintiff would have to wait as long as an hour to reach the food. (*Id.* ¶ 20.)  In response to the motion for summary

4

judgment, Plaintiff expands this claim, asserting that "there were times that he had to wait more than two hours to receive his tray," (*Id.*), but his deposition testimony is consistent with the shorter time estimate: when asked how long he had to wait, Plaintiff testified, "[a]nywhere from like a half hour or hour." (Barbosa Dep., Dkt. No. 65-2, at 26.)

Plaintiff observed "gangs" of roaches in F-House when he was housed in segregation. (Pla.s 56.1 Response ¶ 22.) He complained to Defendant Butkiewicz on unspecified dates, and observed exterminators only once or twice during his six-month tenure in F-House, never in his own cell. (*Id.* ¶¶ 23, 24.) Defendants presented records reflecting visits from a professional pest control service provider at least eight times per month during that period. (Defs' 56..1 ¶ 25, citing Critter Ridder invoices, [65-2], at 30, 33, 36, 39, 42, 45, 48, 50.) Those records document repeat visits to the visitor center; to the kitchen, laundry, chapel, and barbershop; to administrative offices, the officers' quarters, and the warden's house; Plaintiff is correct that they contain no specific reference to extermination of the cells themselves. (See *id.*) Plaintiff claims, in addition, that he was never given cleaning supplies during his six-month tenure in segregation; that he broke out in "red bumps" due to the blankets and the roaches[1]; that mice ate property he stored under his bed while in segregation; and that "particles" from the blanket irritated his eyes and lungs. (Pl.'s 56.1 Response ¶¶ 27-30.) Though he now claims to have associated Burzinski's name with his face (*Id.* ¶ 31), Plaintiff testified at his deposition that he never advised Defendants McCann or Burzinski about the conditions alleged in his complaint. (Defs' 56.1 ¶ 31, citing Barbosa Dep., Dkt. 65-2, at 24, 28.) His assertion that he now recognizes Burzinski does not rebut Defendants' statement that Plaintiff did not voice complaints to him.

---

[1] Plaintiff now contends his deposition testimony "says nothing about" the red bumps having any connection to his blanket and "definately [sic] does not say that the roaches caused the red bumps." (Pl.'s 56.1 Response ¶ 28.) In fact, however, he testified as follows: "Q. Did you complain to anyone about the red bumps that were on your body? A. Butkiewicz and Vaughn because that was from the blankets and from the roaches being in there." (Barbosa Dep., Dkt. 65-2, at 32.)

## **DISCUSSION**

**Summary Judgment Standard**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wackett v. City of Beaver Dam,* 642 F.3d 578, 581 (7th Cir. 2011). Defendants, as the moving party, have the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If Defendants meet this burden, Plaintiff must respond with specific facts showing that the jury could find in his favor, and there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634).

The standards for analysis of an Eighth Amendment claim are well-recognized: A prison official is liable under that Amendment for denying a prisoner of his basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008); *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 847 (1994). Deliberate indifference means that the official had actual knowledge of the harm so that the court can infer a conscious refusal to prevent it. *Duckworth v. Franzen*, 780 F.2d 645, 644 (7th Cir. 1985), *abrogated on other grounds by Farmer, see Haley v. Gross*, 86 F.3d 630, 644 n.34 (7th Cir. 1996). An official who has actual knowledge of an excessive risk to an inmate's health and safety is not liable if he responded reasonably to the known risk, even if the response was not effective in averting harm, because those circumstances do not amount to deliberate indifference. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

**No Personal Involvement for McCann or Burzinski**

Liability for a constitutional violation arises only where the defendant is personally involved

6

in the deprivation. Defendant McCann is the former Warden at Stateville. Apart from that status, Plaintiff has offered no basis for the conclusion that McCann was aware of the alleged deprivations, and has acknowledged that he never complained directly to McCann about the conditions at issue. McCann's status as warden is insufficient to establish his involvement. *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986). Moreover, Plaintiff has admitted that he never complained to Defendants McCann and Burzinski, and testified at one point that he does not know who Burzinski is. There is no basis in this record for a finding that McCann or Burzinski knew of, facilitated, approved, condoned, or turned a blind eye to the conditions of which he complains. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing cases). Burzinski and McCann are entitled to summary judgment.

**Conditions of Confinement Claims**

Plaintiff testified that he did complain to Vaughn and Butkiewicz on several unspecified occasions. That testimony creates a genuine dispute of fact concerning Defendants Vaughn and Butkiewicz's awareness of alleged violations. With respect to certain of Plaintiff's claims, however, other evidence defeats the inference that they were deliberately indifferent to those violations. Safety and Sanitation reports submitted by Defendants show that during the relevant time period, the prison was regularly inspected, and that work orders were issued for the repair of windows and screens. The reports also document checks for availability of hot water, and records show that a repair was performed in May 2007 and that hot water was available thereafter. The fact that Plaintiff nevertheless experienced broken windows and cold water, while regrettable, does not establish that Defendants were indifferent.

Work orders for the repair of the toilets in F-House in August and October 2007 show that Plaintiff's complaints about the toilet in his cell were not ignored. Moreover, any assertion that plumbing repairs were unsuccessful would not by itself establish that Defendants were deliberately indifferent. Indeed, Plaintiff has not challenged Defendants' evidence of regular maintenance of

7

the toilets. Instead, he takes issue with the fact that the toilet was set on a timer that allowed it to flush only once every fifteen minutes. However unpleasant it may be to be confined in a small space with a full toilet for several minutes, Plaintiff has not satisfied the court that the flush timer is actionable. A handful of federal courts have addressed the question, and none has found a timed flush to run afoul of the Eighth Amendment. In *Barnes v. Wiley*, No. 06-1307, 203 Fed. App'x. 939 (10th Cir. 2006), the Tenth Circuit concluded that a restriction that permitted a prisoner only two toilet flushes per hour did not amount to cruel and unusual punishment. In *Bruner v. Ventura County Sheriff's Department*, No. CV 08-02636 RSWL (RZ),2008 WL 4723209, * 4 (C.D. Cal. Oct. 23, 2008), the court explained: "That the jail's toilets flush on a timer–thereby requiring inmates to smell human waste until the next flush–is not so 'objectively serious' a deprivation of basic human needs as to violate Plaintiff's constitutional rights." *See also Robinson v. Illinois State Correction Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill.1995) ("Although unpleasant," low water pressure in, and inadequate flushing of, cell toilet, resulting in smell of feces and urine, do not violate inmate's constitutional rights); *Norwood v. Hubbard*, No. 09-cv-00690-AWI-GSA PC, 2009 WL 2982653 (E.D. Cal. Sept. 11, 2009) ("Two toilet flushes every ten minutes . . . is more than adequate to satisfy the constitutional guarantee of adequate sanitation."); *Morgan v. Sisto*, No. 2:08-cv-1244 MCE JFM (PC), 2009 WL 2252553 (E.D. Cal. July 28, 2009) (toilets that shut off for a one-hour period if flushed more than twice in five minutes do not result in a deprivation sufficiently serious to violate the Eighth Amendment).

Plaintiff's complaints regarding meals also do not survive this motion. Plaintiff claims he suffered indigestion and irregular bowel movements that he believes are a result of the fact that his breakfast was served between 2:00 and 3:00 a.m. The Seventh Circuit has held that "a well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required" to satisfy the Constitution. *Lunsford v Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994), quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). There is no evidence that this standard was violated

in Plaintiff's case, however. Although he suggests that his meals posed a health hazard, Plaintiff offers no specifics regarding any need for medical treatment other than complaints "whenever the med tech came up there . . . ." A plaintiff's complaints about food can reach the level of a constitutional violation, but the odd timing of Plaintiff's breakfast service and his belief that indigestion and irregularity resulted are insufficient to establish a serious medical need. Plaintiff testified that he complained to the med tech and was furnished with Ibuprofen on occasion; he offers no medical records or other evidence that would establish that his medical condition was serious. Nor is there any evidence that indigestion and irregularity were caused by the time of the day at which he was served breakfast or the fact that his meals sometimes sat outside his cell for as long as an hour before he was able to eat them.

What remains of the case are Plaintiff's complaints about the sleeping conditions in his cell. Plaintiff claims his cell was infested with so many roaches that he was unable to sleep for more than a few hours at night, leaving him sleep-deprived, unable to exercise or to concentrate, and suffering from memory problems. (Barbosa Affidavit, Dkt. No. 100, at 11-12.) Stateville Correctional Center had a contract with an exterminator, and prison records show that the pest service visited F-House at least twice a month during the time Plaintiff was housed there. Plaintiff contends, however, that the exterminators never treated the cells themselves, and the records Defendants have submitted do not rebut his assertions. Prolonged infestation of pests, including cockroaches and mice, may constitute a deprivation serious enough to constitute a due process violation. *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996). In *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008), cited by Defendants, the Seventh Circuit noted that the prison's policy of frequent exterminations defeated a prisoner's claim of deliberate indifference; but in that case, the plaintiff conceded that the exterminator had treated his cell approximately every month. *Compare Villanueva v. George*, 659 F.2d 851 (8th Cir. 1981) (prisoner whose cell was infested with insects established a claim worthy of a jury's consideration by showing that certain areas in the prison were

sprayed by an exterminator once a month, but the cells were not).   Unlike the plaintiff in *Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815 *9 (N.D. Ill. Dec. 17, 2010), another prisoner confined to the same segregation unit in 2007, Plaintiff here does assert that "the problem was constant [and] rampant [and] that bugs or mice crawled on him or bit him."  Plaintiff Barbosa may be unable to establish these claims to a jury, but the court concludes his pest infestation claim survives summary judgment.

Finally, the court turns to the issue of bedding. Plaintiff alleged that in his six months in F-house, he had a dirty and lumpy mattress and suffered neck and back pain as a result.   He complained about his mattress "a couple times, like three or four times" to Defendant Vaughn and once a month to Defendant Butkiewicz.  (Barbosa Dep., Exhibit A to Defs' 56.1, at 11-14.)  A lack of sanitary conditions, including clean bedding, may indeed qualify as a denial of the "minimal civilized measure of life's necessities." *Townsend,* 522 F.3d at 774, citing *Gillis v. Litscher*, 468 F.3d 488, 494 (7th Cir. 2006). *See also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992) (conditions of confinement that include filth, constant smells of human waste, and dirty bedding can violate the Eighth Amendment). In *Townsend*, a prisoner complained that this health was jeopardized by sleeping on a wet and moldy mattress. The prisoner's testimony that he personally complained about his mattress and requested a new, clean one was sufficient to survive summary judgment on his claim that prison officials were deliberately indifferent to unsanitary conditions.

Disappointingly, Defendants did not discuss this claim in their motion for summary judgment, in the apparent belief that it had been dismissed.[2]   The claim therefore survives summary

---

[2]   In their Memorandum of Law, Defendants assert, "The only claims that remain are: 1) Plaintiff's cell was infested with roaches; 2) meals were served cold, often at 2:00 or 3:00 A.M.; 3) the showers were cold due to broken windows and cold water; and 4) the toilets malfunctioned, flushing at a maximum every fifteen minutes." (Memorandum in Support of Summary Judgment [Dkt. No. 65] at 2-3.) In fact, the court denied Defendants' motion to dismiss with respect to Plaintiff's claims "regarding being served food that had been sitting for an extended period of time, showering in extreme cold, prolonged exposure to pests, lack of sanitation, and failure to provide
(continued...)

judgment, though the court notes that it may have little merit. A lumpy or uncomfortable mattress does not by itself pose an objectively serious risk of harm. And although Plaintiff contends the mattress was dirty, he acknowledged that he received a clean sheet once a week (Barbosa Dep. at 11), evidently consistent with IDOC rules requiring that "clean linen . . . be provided on a scheduled weekly basis." *See Thomas v. Winters*, No. 04-3186, 2006 WL 2547961 (C.D. Ill. Aug. 31, 2006) (no Eighth Amendment violation where soiled mattress was covered by a sheet washed at least weekly).

---

[2](...continued)
reasonably adequate sleeping arrangements." Memorandum Opinion and Order [Dkt. No. 42] at 12 (emphasis added). The court ruled on discovery disputes concerning this issue, see Orders of 9/15/2010 [Dkt. No. 98] and 10/28/2010 [Dkt. No. 104], which presumably would not have arisen had such claims been dismissed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's January 10, 2011 filing [Dkt. No. 116] is deemed a motion for reconsideration, and is granted. The court withdraws its earlier ruling [Dkt. No. 115] on Defendants' motion for summary judgment. That motion [Dkt. No. 62] is denied with respect to Plaintiff's claims of pest infestation and dirty bedding, but is otherwise granted. A telephone status conference is set for Thursday, October 5, 2011, at 10:00 a.m., the call to be initiated by counsel for Defendants. The conference will be conducted on the record, and a transcript will be prepared. Plaintiff's refusal to participate will result in dismissal of his remaining claims.

ENTER:

Dated: September 12, 2011

_____
REBECCA R. PALLMEYER
United States District Judge