**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IRINEO BARBOSA R-45182 | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08 C 5012 |
| TERRY McCANN, ED BUTKIEWICZ, LT. BURZINSKI, and LT. VAUGHN, | ) ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Irineo Barbosa has brought this suit under 42 U.S.C. § 1983, asserting that he suffered unconstitutional confinement conditions in segregation (a/k/a "F-House") at Stateville Correctional Center during the summer of 2007. Of the many claims advanced in Plaintiff's initial complaint, all but two have been dismissed in earlier orders. *See Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469, *1-2 (N.D. Ill. Sept. 12, 2011). Defendants now move for summary judgment on Plaintiff's remaining claims: that he had inadequate bedding, and that his cell was infested with cockroaches. For the reasons set forth here, the motion is granted.

## FACTUAL BACKGROUND

Plaintiff lived in punitive segregation at Stateville Correctional Center's F-House from May 2, 2007 until November 2, 2007. (Plaintiff's 56.1 Response (hereinafter "Pl.'s Resp.") [99] ¶ 5.) Plaintiff claims that he saw "gangs" of roaches in his cell on unspecified dates during that time. (Pl.'s Resp. at ¶ 22.) Plaintiff asserts that the roaches kept him from sleeping more than a few hours at night, leaving him sleep-deprived, unable to exercise or concentrate, and suffering from memory problems. (Barbosa Aff. [100] at 11-12.) He also stated that he developed "red bumps" due to the roaches, and was not provided cleaning supplies for his cell. (Barbosa Dep., Ex. A to Defs.' Mem. of Law in Support of Their Mot. for Summ. J. (hereinafter "Defs.' Mem."), at 31:15-24, 32:1-13.) He complained to Defendant Edmund Butkiewicz, a counselor at Stateville,

on unspecified dates, and he saw exterminators in the building once or twice during his time at F-House, but never in his own cell. (Pl.'s Resp. ¶¶ 23-24.)

In support of an earlier motion for summary judgment, Defendants presented evidence that outside professional exterminators visited Stateville at least eight times per month during the disputed period. (Defs' Local Rule 56.1 Filing (hereinafter "Defs.' 56.1") [63] ¶ 25, citing Critter Ridder invoices, [65-2], at 30, 33, 36, 39, 42, 45, 48, 50.) Those records document repeated visits to the visitor center, kitchen, laundry, chapel, barbershop, administrative offices, officers' quarters, and warden's house. (Critter Ridder invoices, [65-2], at 30, 33, 36, 39, 42, 45, 48, 50.) They do not contain any explicit reference to extermination of prisoners' cells. (Critter Ridder invoices, [65-2], at 30, 33, 36, 39, 42, 45, 48, 50.) As Defendants point out, however, Plaintiff himself acknowledged in his deposition that he witnessed exterminators spray "in front of the cells," "on the front of [his cell] door" and "at the bottom [of the door]." (Barbosa Dep. 30:3-7.)

Plaintiff also alleges that Defendants denied him denied reasonably adequate sleeping arrangements because his cell's mattress was black and lumpy and he was denied a pillow, resulting in neck, head, and back pain. (Pl.'s Resp. ¶¶ 6, 8-9.) Plaintiff claims that he complained to Defendants Butkiewicz and Vaughn on several unspecified dates about his bedding. (Pl.'s Resp. ¶ 7.) Plaintiff conceded in his deposition, however, that he had received a clean sheet once a week. (Barbosa Dep. 11:1-13.)

## **DISCUSSION**

Summary judgment is proper when there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Wackett v. Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). Although this court earlier denied their motion for summary judgment on the merits of the roach-infestation and dirty-bedding claims (Memorandum Opinion and Order [122], at 9-10), Defendants assert that they are entitled to qualified immunity, which "shields government officials from civil damages liability unless the official violated a statute or constitutional

2

right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Qualified immunity doctrine provides "'ample room for mistaken judgments' and protects all those but the 'plainly incompetent and those who knowingly violate the law.'" *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

The court earlier concluded that Plaintiff had presented a dispute of fact concerning alleged constitutional violations. To prove such violations, Plaintiff would need to demonstrate, first, that he suffered a sufficiently serious deprivation and, second, that Defendants acted with deliberate indifference to his confinement conditions. *Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008). The court concluded earlier that prolonged infestation of cockroaches that seriously impacts a prisoner's health may cause a severe enough deprivation to constitute a due process violation. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996); *but see Stanley v. Page*, 44 F. App'x 13 (7th Cir. 2002) (infestation of pests in cell and finding roaches in ice cubes not Eighth Amendment violation). Considering all facts in the light most favorable to Plaintiff, he has met the sufficiently-serious-deprivation requirement.

Government officials do have some discretion in how they address inadequate prison conditions, such as roach infestation, without evidencing deliberate indifference. *See Sain*, 512 F.3d at 895. In this motion, Defendants emphasize this principle and point out that no case law establishes that failure to exterminate within individual prison cells is an abuse of discretion. Thus, Defendants urge, the unlawfulness of their conduct was not apparent. (Defs.' Reply in Supp. of Their Mot. for Summ. J. on the Issue of Qualified Immunity (hereinafter Defs.' Reply) [137] at 3-4) ("Plaintiff cannot cite to any Seventh Circuit law that requires prisons to do more than take reasonable measures to abate infestation problems.") Accordingly, Defendants urge, they are entitled to qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 637 (1997). In order to show a "clearly established" right, Plaintiff need not identify a case holding that a prisoner has a

3

constitutional right specific to the actions alleged against Defendants. *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012) ("[C]ases in this circuit have understood the term 'right' in a broader sense."). Nevertheless, the qualified immunity doctrine shields public officials from liabilty for "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted).

Plaintiff here asserts that there was no extermination spraying inside his cell, and Defendants have not contested this. On closer examination of the record, however, the court is no longer certain that the failure to spray inside the cell clearly establishes that Defendants were deliberately indifferent to the alleged unconstitutional conditions (as opposed to simply mistaken about what steps were necessary). During the relevant months, an exterminator visited the prison eight times per month, a frequency which itself belies deliberate indifference toward a pest infestation problem. Moreover, though the exterminators did not actually enter Plaintiff's own cell, he acknowledges that they sprayed in front of his cell, on the door itself, and at the bottom of the door. Spraying the inside of a confined living space may not be safe or practicable in a prison setting, but Defendants have not explained their failure to take this additional step, and Plaintiff's testimony suggests that further efforts were necessary to rid his cell of the "gangs" of roaches he witnessed there. Still, while Defendants' efforts may have been ineffective, there were repeated and well-documented visits from exterminators who sprayed in several locations throughout the prison and made contact with the outside of Plaintiff's own cell. This evidence is inconsistent with a finding of deliberate indifference. At a minimum, the evidence defeats the conclusion that Defendants Butkiewicz and Vaughn, to whom Plaintiff complained, knew or should have known that their conduct violated the Constitution.

As to Plaintiff's claim that his bedding was inadequate, an uncomfortable mattress, by itself, is not a constitutional violation. *See Killen v. McBride*, 70 F.3d 1274, 1995 WL 687626, *2 (7th Cir. 1995) (the Constitution "does not mandate comfortable prisons") (internal quotation marks

and citations omitted). Plaintiff's allegation that his mattress was dirty might require further analysis if he had not conceded in his deposition that he was furnished each week with a clean sheet to cover the mattress. (Barbosa Dep. 11:1-13.) Clean sheets that cover an otherwise dirty mattress are sufficient to prevent the type of serious deprivation prohibited under the Constitution. *See Thomas v. Winters*, No. 04-3186, 2006 WL 2547961, at *8 (C.D. Ill. Aug. 31, 2006) ("[P]laintiff did not have to lie directly on a soiled mattress, but instead slept on a clean sheet on top of the mattress. Under these circumstances, the Court does not believe the soiled mattresses, as described by the plaintiff, amounted to the kind of serious deprivation prohibited by the Eighth Amendment, either viewed alone or viewed in the totality of conditions."). The allegedly inadequate bedding provided did not cause Plaintiff to suffer a violation of his constitutional rights.

## **CONCLUSION**

Defendants' motion for summary judgment [127] is granted. Judgment is entered in favor of Defendants.

ENTER:

Dated: September 26, 2012

REBECCA R. PALLMEYER
United States District Judge

5